Y. Jae Kim, Esq.
Firouzeh Nur-Vaccaro, Esq.
KIM IP LAW GROUP LLC
129 W. Evesham Road
Voorhees, NJ 08043
(856) 520-8988
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NORTHERN DIVERS USA, INC. | : | |
| | : | DOCKET NO.: |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | |
| ATLANTIC SUBSEA, INC., | : | **COMPLAINT** |
| PSEG GLOBAL USA, INC., | : | |
| and | : | **JURY TRIAL DEMANDED** |
| XYLEM DEWATERING SOLUTIONS, | : | |
| INC. | : | |
| | : | |
| Defendants. | : | |
| | : | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Northern Divers USA, Inc. ("Northern Divers"), by and through its attorneys, for its Complaint against Defendants Atlantic Subsea, Inc. ("ASI"), Public Service Enterprise Group Inc. ("PSEG"), and Xylem Dewatering Solutions, Inc. ("XYLEM"), herein alleges as follows:

## NATURE OF THE ACTION

1. This is an action for infringement of United States Patent No. 9,687,891 (the "Patent-in-Suit" or "the '891 Patent") by Defendants, arising under the patent laws of the United

States, Title 35, United States Code, Sections 100 *et seq.*, including 35 U.S.C § 271, and seeking to recover damages, attorney's fees and costs.

## PARTIES

2.Plaintiff Northern Divers USA, Inc. ("Northern Divers") is an Illinois corporation with its principal place of business located at 1924 Main Street Road, Spring Grove, Illinois 60081.

3.On information and belief, Defendant ASI is a New Jersey corporation with its principal place of business located at 108 Ferry Road, Bridgeport, New Jersey 08014.

4.On information and belief, Defendant PSEG is a New Jersey corporation with its principal place of business located at 80 Park Plaza, Newark, New Jersey 07102.

5.On information and belief, Defendant XYLEM is a New Jersey corporation with its principal place of business located at 84 Floodgate Road, Bridgeport, NJ 08014.

6.ASI, PSEG, and XYLEM collectively shall be referred to as the "Defendants."

## JURISDICTION AND VENUE

7.This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq*. Accordingly, this Court has jurisdiction over Plaintiff's claims alleged herein pursuant to 35 U.S.C. §§ 1331 and 1338(a).

8.ASI is subject to personal jurisdiction in New Jersey because, among other things, it resides in New Jersey and is incorporated in New Jersey.

9.PSEG is subject to personal jurisdiction in New Jersey because, among other things, it resides in New Jersey and is incorporated in New Jersey.

10.XYLEM is subject to personal jurisdiction in New Jersey because, among other things, it resides in New Jersey and is incorporated in New Jersey.

11. This Court also has personal jurisdiction over the Defendants because Defendants have committed acts of patent infringement in this District.

12. Venue is proper pursuant to 28 U.S.C. § 1400(b) because (a) the Defendants reside in this District and (b) Defendants have a regular and established place of business in this District and have committed acts of patent infringement in this District.

## FACTUAL ALLEGATIONS

13. Defendant PSEG, a public utility, owns and operates a nuclear power plant located in Salem, New Jersey (hereinafter referred to as the "Salem Plant"). Defendant ASI is a marine services provider and has, for a number of years, provided diving and marine services for PSEG for the cleaning of the underwater pipes of the Salem Plant, which get clogged and/or obstructed with dirt and debris from the body of water in which the pipes are located. XYLEM provides the specially designed equipment used by ASI for providing marine services to PSEG.

14. Plaintiff Northern Divers is a leading provider of marine services founded by Mr. Frank Frosolone, a highly experienced diver, marine services provider, and inventor for methods of cleaning underwater pipes.

15. In 2015, PSEG hired ASI to clean an obstructed 700-foot underwater pipe at the Salem Plant. Despite numerous attempts and significant efforts over several months, ASI had limited success in cleaning the 700-foot underwater pipe and only managed to clean about ten feet of the obstructed pipe.

16. PSEG through its employee James Lewis, who oversaw maintenance of the pipes at the Salem Plant for PSEG, researched alternative solutions to cleaning its underwater pipes, given the difficulties experienced by ASI and ultimately learned of Northern Divers's innovative and proprietary system for cleaning underwater pipes.

17. As a result, PSEG instructed ASI to contact Northern Divers for information about its proprietary system for cleaning underwater pipes. Following PSEG's instructions, ASI contacted Northern Divers for assistance in cleaning PSEG's obstructed underwater pipes.

18. After meeting with Northern Divers and learning of its proprietary system and method for cleaning underwater pipes, PSEG and ASI decided to engage Northern Divers to utilize its proprietary system and method for cleaning obstructed underwater pipes at the Salem Plant.

19. Due to the highly restrictive nature of access and clearance to PSEG's nuclear power plants, such as the Salem Plant, Northern Divers would have been required to go through a time-consuming security clearance process to perform work at the Salem Plant. Due to the time-sensitive nature of the job, and since Defendant ASI already had access and clearance to PSEG's facilities, PSEG, through its representative James Lewis, arranged for Northern Divers to train ASI to use Plaintiff's proprietary system and method, utilizing Plaintiff's know-how and trade secrets. PSEG and ASI also agreed that ASI would clean PSEG's underwater pipes under Northern Divers's supervision, using Northern Divers's proprietary system and methods.

20. On January 28, 2015, Northern Divers entered into a Confidentiality Agreement with James Lewis, as a representative of Defendant PSEG, wherein Northern Divers agreed to share its Confidential Information, including its proprietary pipe cleaning technology and methodologies with PSEG for the purpose of cleaning PSEG's obstructed pipes at the Salem Plant, and PSEG agreed to keep such information confidential (hereinafter the "2015 PSEG Contract"). A true and correct copy of the 2015 PSEG Contract is attached hereto as Exhibit 1.

21. On January 30, 2015, Northern Divers entered into an almost identical Confidentiality Agreement with Defendant ASI through its representative Ajay A. Talwar, wherein Northern Divers agreed to share its proprietary and Confidential Information, including

underwater pipe cleaning technology and methodologies with ASI for the purpose of cleaning PSEG's underwater pipes at the Salem Plant, and ASI agreed to keep such information confidential (hereinafter the "2015 ASI Contract"). A true and correct copy of the 2015 ASI Contract is attached hereto as Exhibit 2.

22. Two days later, on February 2, 2015, Plaintiff Northern Divers entered into an almost identical Confidentiality Agreement with Defendant XYLEM through its representative John Farrell, wherein Northern Divers agreed to share its proprietary Confidential Information, including pipe cleaning technology and methodologies with XYLEM for the purpose of cleaning PSEG's obstructed pipes at the Salem Plant, and XYLEM agreed to keep such information confidential (hereinafter the "2015 XYLEM Contract"). A true and correct copy of the 2015 XYLEM Contract is attached hereto as Exhibit 3.

23. The 2015 PSEG Contract, the 2015 ASI Contract, and the 2015 XYLEM Contract define "Confidential Information" as "any and all information not generally known to the public, technical or otherwise, disclosed to [each Defendant] regarding the System." *See* Exhibits 1 at ¶ 1 and 2 at ¶ 1. The 2015 Contracts further states "Confidential Information includes, but is not limited to, Northern Divers interest in the System and Purpose, Work Product, trade secrets, specifications, technical descriptions, discussions with Northern Divers, and that fact that Northern Divers is working with [each Defendant]." *See id*.

24. Defendant Xylem is, among other things, a supplier of the pumps that were supplied, modified, assembled and used based on Northern Divers's Confidential Information, including pipe cleaning technology and methodologies, to clean PSEG's pipes at the Salem Plant. The 2015 XYLEM Contract allowed ASI to work with XYLEM so that XYLEM can prepare, modify and supply equipment to ASI to apply Northern Divers's proprietary Confidential

Information, including pipe cleaning technology and methodologies to perform cleaning procedures for PSEG while protecting Northern Divers's confidential and proprietary information. Upon information and belief, XYLEM was paid by ASI for its services in preparing, modifying, and use of its equipment in cleaning the underwater pipes at PSEG's Salem Plant.

25. Using Northern Divers's Confidential Information, ASI, with Northern Divers's supervision and engineering know-how, and using XYLEM's pumps and other equipment, effectively cleaned the entire 700-foot stretch of PSEG's obstructed pipes at the Salem Plant in three days on or around January 30, 2015.

26. ASI performed a cleaning of PSEG's underwater pipes at the Salem Plant on or around January 30, 2015, utilizing Northern Divers's proprietary technology and with the assistance of Northern Divers. ASI paid Northern Divers $100,000 for its services, expertise and use of Northern Divers's proprietary underwater pipe cleaning technology (see invoice dated January 30, 2015). A true and correct copy of the 2015 ASI Contract and the paid invoice are attached hereto as Exhibits 2 and 4.

27. Prior to working with PSEG and ASI, Northern Divers filed for patent protection of its pipe cleaning system and method on March 15, 2014, with the U.S. Patent and Trademark Office ("USPTO") as U.S. patent application no. 61/953,785. On March 12, 2015, Northern Divers subsequently filed a non-provisional utility patent application (i.e., U.S. patent application no. 14/656,1389) with the USPTO, claiming priority to U.S. patent application no. 61/953,785.

28. On June 27, 2017, the USPTO issued a patent to Northern Divers, entitled "Intake Pipe Cleaning System and Method," U.S. Patent No. 9,687,891. A true and correct copy of the '891 Patent is attached hereto as Exhibit 5.

29. In 2017, the Salem Plant's underwater pipe again became obstructed. Upon information and belief, PSEG requested ASI to repeat the same operation that was performed in 2015.

30. Because ASI again needed to use Northern Divers's expertise and proprietary methodologies and system to clean PSEG's underwater pipes, ASI executed another contract with Northern Divers and paid Northern Divers $100,000 pursuant to the terms of this contract. Said contract is hereinafter referred to as the "2017 ASI Contract." A true and correct copy of the 2017 Contract and the paid invoice are attached hereto as Exhibits 6 and 7.

31. As in 2015, using Northern Divers's unique and patented methodology and other Confidential Information, ASI, with Northern Divers's instruction and supervision, and using XYLEM's pumps, modified manifold designed by Northern Divers, and other equipment, again cleaned the entire 700-foot underwater PSEG pipe in a matter of days.

32. Upon information and belief, in November of 2021, PSEG again engaged ASI to clean the Salem Plant's underwater pipes. Upon information and belief, ASI proceeded to do so, once again using (a) Northern Divers's unique and patented methodology, (b) Northern Divers's Confidential Information, and (c) XYLEM's pumps, modified manifold designed by Northern Divers, and other equipment. However, this time, ASI did not seek Northern Divers's involvement and did not pay Northern Divers for use of its technology and intellectual property. Moreover, Northern Divers did not consent to the use of its patented technology or its Confidential Information.

33. ASI willfully infringed the '891 patent, having specific knowledge of the Patent-in-Suit and Plaintiff's proprietary system and methods. XYLEM, with knowledge of the Patent=in-Suit, provided its pumps, modified manifold designed by Northern Divers, and other

equipment to ASI for said cleaning operations for the benefit of PSEG. Both ASI and XYLEM profited handsomely from this operation, using Northern Divers's patented methodology and Confidential Information, without any remuneration to Northern Divers and without Northern Divers's consent or license.

34. Upon learning of this, on December 9, 2021, Northern Divers approached ASI to address ASI's apparent failure to operate under the existing agreements between the parties by proposing a new contract to cover additional cleaning operations of the Salem Plant.

35. In response, ASI refused to abide by the existing contracts or enter into any new agreement with Northern Divers.

36. Upon information and belief, ASI willfully used Northern Divers's patented method and Confidential Information to conduct subsequent cleaning operations of the Salem Plant underwater pipes without authorization on multiple occasions using pumps, modified manifolds designed by Northern Divers, and equipment provided by XYLEM.

37. By letters dated February 3, 2022, and September 22, 2022, Northern Divers demanded fees for ASI's use of its patented methodology and willful infringement of its patent. True and correct copies of the letters are attached hereto as Exhibits 8 and 9.

38. By letters dated February 22, 2022, and October 17, 2022, ASI rejected Northern Divers's demands. True and correct copies of the letters are attached hereto as Exhibits 10 and 11.

39. ASI failed to honor their contracts with Plaintiff and were not licensed to practice Plaintiff's patented technology. ASI's, PSEG's and XYLEM's continued and willful acts of infringement of Plaintiff's patent gives rise to the counts contained herein.

## THE PATENT-IN-SUIT

40. Northern Divers incorporates by reference the allegations of the preceding paragraphs as if set forth at length herein.

41. The '891 Patent, entitled "INTAKE PIPE CLEANING SYSTEM AND METHOD" (attached as Exhibit 5), was duly and legally issued on June 27, 2017, by the U.S. Patent and Trademark Office.

42. The inventor named on the '891 Patent is Frank Frosolone.

43. Northern Divers is the owner and assignee of the '891 Patent.

44. The '891 Patent claims priority to U.S. provisional patent application no. 61/953,785 filed March 15, 2014.

45. The '891 Patent only includes method claims.

## COUNT ONE – INFRINGEMENT OF THE '891 PATENT BY ASI

46. Northern Divers incorporates by reference the allegations of the preceding paragraphs as if set forth at length herein.

47. Defendant ASI became aware of Northern Divers's proprietary systems and methods because of its 2015 ASI Contract with Northern Divers and its communications with Northern Divers in 2015.

48. Defendant ASI was aware of Northern Divers's pending patent application when they entered contracts with Northern Divers in 2015 and 2017 to use Northern Divers's proprietary method of cleaning PSEG's pipes. Defendant ASI has admitted to being aware of Northern Divers's pending patent application on multiple occasions and as early as 2015.

49. Upon information and belief, Defendant ASI was aware that the '891 Patent issued on or around June 27, 2017.

50. Upon information and belief, Defendants were aware that they did not have a license to the Patent-in-Suit, and Northern Divers had never consented to use of its patented system or methods. See, e.g., 2015 Contract at ¶ 8 ("no rights or licenses under any patent, Confidential Information, know-how, or other proprietary right owed by one party are granted to the other").

51. Upon information and belief, subsequent to its 2017 cleaning operation for PSEG, Defendant ASI continued to perform one or more jobs for PSEG using Northern Divers's patented methodology, without Northern Divers's knowledge, consent, or license, thereby willfully infringing one or more claims of the '891 Patent, including at least claim 1 of the '891 Patent, after its issuance.

52. Defendant ASI has infringed one or more claims of the '891 Patent in providing services to Defendant PSEG and intends to continue to infringe one or more claims of the '891 Patent. Defendant ASI's previous and ongoing activities were done and will be done with knowledge of the '891 Patent and specific intent to infringe that patent.

53. Claim 1 of the '891 Patent recites:

> A method for removing debris from an interior of a water intake pipe that has collected over time, a substantial portion of the water intake pipe being submerged in a body of water and lying on the bottom of the body of water, the method comprising:
> fluidly isolating one end of the water intake pipe that is disposed opposite an inlet end of the water intake pipe;
> maintaining the inlet end the water intake pipe in fluid communication with the body of water and in place adjacent the bottom of the body of water such that a substantial portion of the water intake pipe remains submerged and full of water from the body of water;
> arranging at least one pump to draw a flow of liquid water directly from the body of water;
> fluidly connecting an output of the at least one pump to the one end of the water intake pipe through a junction disposed between the one end of the water intake pipe and the inlet end of the water intake pipe;
> activating the at least one pump to draw the flow of liquid water directly from the body of water;

4893-0695-8549, v. 3

>>providing the flow of liquid water to the water intake pipe through the junction such that a flow of liquid water passes through the water intake pipe to create a continuous water circuit for the liquid water flow that extends from the pump, through the junction, into the one end of the water intake pipe, through the substantial portion of the water intake pipe that is disposed along the bottom of the body of water, through the inlet end of the water intake pipe, and into the body of water to remove the debris, which is ejected from the water intake pipe through the end into the body of water until the water intake pipe is clean; and

>>maintain the pump active to provide the liquid flow of water through the water intake pipe until the water intake pipe is clean, wherein the liquid flow of water provided through the water intake pipe for cleaning is higher than a normal flow of liquid water through the water intake pipe during normal operation.

('891 Patent at col. 9, lines 8-45.)

54. ASI directly infringed claim 1 under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by using and performing all the steps of claim 1 while performing cleaning operations of the Salem Plant's underwater pipes during the cleaning operations performed subsequent to the 2017 operation for PSEG.

55. Upon information and belief, ASI utilized the same or substantially the same underwater cleaning process as that performed by ASI in connection with the 2015 cleaning operations of the Salem Plant's underwater pipes.

56. Upon information and belief, the process included fluidly isolating one end of PSEG's Salem Plant's underwater pipe using a flange to cap off the one end. Upon information and belief, the Salem Plant's underwater pipe is in fluid communication with the Delaware River i.e., a body of water adjacent the Salem Plant, and said underwater pipe takes in water from the Delaware River and is adjacent a bottom of the Delaware River.

57. Upon information and belief, the cleaning process fluidly isolated one end of the underwater pipe opposite another end of the underwater pipe. Upon information and belief, one end of the Salem Plant underwater pipe was maintained in fluid communication with the body of

water and adjacent the bottom of the body of water such that a substantial portion of the underwater pipe remained submerged and full of water from the body of water.

58.     Upon information and belief, at least one pump was used to draw a flow of liquid water directly from the Delaware River.  Upon information and belief, an output of the at least one pump was connected to an end of the underwater pipe through a junction disposed between an end of the underwater pipe and an opposite end of the underwater pipe.

59.     Upon information and belief, the pump was operated to draw a flow of liquid water directly from the Delaware River and provide said flow of liquid water to the underwater pipe through the junction such that a flow of liquid water passed through the underwater pipe to create a continuous water circuit for the liquid water flow that extended from the pump, through the junction, into an end of the underwater pipe, through the substantial portion of the underwater pipe that was disposed along the bottom of the body of water, through an end of the underwater intake pipe, and into the body of water to remove debris therein, which was ejected from the underwater pipe through an end into the body of water until the underwater pipe was sufficiently cleaned.

60.     Upon information and belief, the process maintained the pump in an active state to provide the liquid flow of water through the underwater pipe until the underwater pipe was clean, the liquid flow of water provided through the underwater pipe for cleaning was higher than a normal flow of liquid water through the underwater pipe during normal operations.  Upon information and belief, the process provided a liquid flow of water at a higher flowrate than a normal flow of water through the underwater pipe during normal plant operations in part by the use of a specifically designed manifold.  Upon information and belief, this is the same process observed by Plaintiff that ASI utilized during the 2015 cleaning operations of the Salem Plant's underwater pipes.

61. ASI's past and continued acts of infringement of the '891 Patent have caused damage to Northern Divers. Thus, Northern Divers is entitled to recover damages from ASI in an amount to be determined at trial, including but not limited to lost profits, but in no event less than a reasonable royalty for ASI's infringement together with interest and costs as fixed by the Court pursuant to 35 U.S.C. § 284.

62. ASI's ongoing infringement of the '891 Patent has caused and will continue to cause irreparable harm to Northern Divers unless and until the Court enters an injunction prohibiting ASI from engaging in further acts of infringement of the '891 Patent.

63. Upon information and belief, ASI's conduct has been, and will continue to be, willful and wanton and justifies an award of enhanced damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

## COUNT TWO – INDUCED INFRINGEMENT OF THE '891 PATENT BY PSEG

64. Northern Divers incorporates by reference the allegations of the preceding paragraphs as if set forth at length herein.

65. Upon information and belief, Defendant PSEG induced infringement of the '891 Patent and continues to do so by actively engaging and instructing ASI to clean its underwater pipe at the Salem Plant using Northern Divers's patented methodologies covered by the '891 Patent.

66. Upon information and belief, Defendant PSEG became aware of Northern Divers's proprietary systems and methods because of its representative James Lewis's research into Northern Divers and its proprietary underwater pipe cleaning technologies, which led to the 2015 PSEG Contract with Northern Divers.

67. Upon information and belief, Defendant PSEG became aware of Norther Divers's patent application no. 61/953,785 at least as early as January 28, 2015, as a result of the 2015

PSEG Contract and of the '891 Patent as early as June 27, 2017, the date of issuance of the '891 Patent.

68. Upon information and belief, after learning of Northern Divers's proprietary underwater pipe cleaning technology, Defendant PSEG actively solicited and instructed Defendant ASI to perform Plaintiff's proprietary cleaning technique on their Salem Plant's underwater pipeline on at least three (and perhaps more) occasions (i.e., in 2015, 2017 and 2021).

69. Upon information and belief, Defendant PSEG directed Defendant ASI to perform cleaning operations on the Salem Plant's underwater pipeline for said 2021 cleaning operation knowing that the process was covered by the '891 Patent since ASI's prior cleaning techniques were expensive and unsatisfactory for cleaning the underwater pipeline at the Salem Plant.

70. Upon information and belief, Defendant ASI, because of Defendant PSEG's encouragement and direction, performed cleaning processes in 2021 the same or substantially the same as those conducted in said 2015 cleaning operations, which cleaning methodologies are covered by one or more claims of the '891 Patent.

71. Upon information and belief, after the 2017 cleaning operation, PSEG engaged ASI to continue to perform work for PSEG using Northern Divers's patented methodology, without Northern Divers's knowledge, consent, or license, thereby infringing one or more claims of the '891 Patent, including at least claim 1 of the '891 Patent, after its issuance.

72. Defendant ASI has infringed one or more claims of the '891 Patent in providing services to Defendant PSEG and will continue to infringe one or more claims of the '891 Patent. Defendant ASI's previous and ongoing activities were done and will be done with knowledge of the '891 Patent and specific intent to infringe said patent.

73. Defendant PSEG, through its direction and requirements imposed on Defendant ASI, has induced infringement one or more claims of the '891 Patent, including at least claim 1 of the '891 Patent. PSEG plans and intends to continue to infringe one or more claims of the '891 Patent. Defendant PSEG's previous and ongoing activities were done and will be done with knowledge of the '891 Patent and specific intent to infringe said patent.

74. The foregoing actions by Defendant PSEG constitute infringement of the '891 Patent, including induced infringement of the '891 Patent. A reasonable opportunity for discovery will likely provide further evidentiary support for such knowledge and intent.

75. PSEG's past and continued acts of infringement of the '891 Patent have caused damage to Northern Divers. Thus, Northern Divers is entitled to recover damages from PSEG in an amount to be determined at trial, including but not limited to lost profits, but in no event less than a reasonable royalty for PSEG's infringement together with interest and costs as fixed by the Court pursuant to 35 U.S.C. § 284.

76. PSEG's ongoing infringement of the '891 Patent has caused and will continue to cause irreparable harm to Northern Divers unless and until the Court enters an injunction prohibiting Defendants from engaging in further acts of infringement, including inducing infringement of the '891 Patent.

77. Upon information and belief, PSEG's conduct has been, and will continue to be, willful and wanton and justifies the award of increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

## COUNT THREE – CONTRIBUTORY INFRINGEMENT OF THE '891 PATENT BY XYLEM

78. Northern Divers incorporates by reference the allegations of the preceding paragraphs as if set forth at length herein.

79. Upon information and belief, Defendant XYLEM has been and continues to contributorily infringe at least one claim of the '891 Patent by offering for sale and selling modified manifolds and other equipment (collectively, the "XYLEM Modified Equipment") which necessarily practice the method of at least claim 1 of the '891 Patent. Upon information and belief, the XYLEM Modified Equipment has no substantial non-infringing uses and is known by the Defendant XYLEM to be specially made or specially adapted for use in practicing the patented method.

80. On February 2, 2015, Defendant XYLEM entered into a confidentiality agreement with Plaintiff to coordinate with Defendant ASI to supply equipment suitable to assist Defendant ASI in performing Plaintiff's proprietary cleaning technology on Defendant PSEG's systems.

81. Upon information and belief, Defendant XYLEM continued to assist Defendant ASI in performing cleaning methods that infringed the '891 Patent while directly knowing that Defendant ASI was performing such infringing operations.

82. Upon information and belief, Defendant XYLEM was aware of the issuance of the '891 Patent by the USPTO on or around June 27, 2017.

83. Upon information and belief, Defendant XYLEM provided equipment to Defendant ASI with the knowledge that such equipment was to be utilized in the performance of Plaintiff Northern Divers's proprietary methods and in a fashion that infringed one or more claims of the '891 patent. Upon information and belief, XYLEM provided ASI with pumps for the 2021 cleaning operations of the Salem Plant underwater pipe.

84. Upon information and belief, XYLEM provided ASI with manifolds specifically modified to meet the requirements of the process covered by at least claim 1 of the '891 Patent and which specifically modified manifolds have no substantial non-infringing use. Upon information and belief, XYLEM provided ASI with a modified pipeline cap for its 2021 cleaning operations of the Salem Plant's underwater pipe to meet the requirement of the process covered by at least one claim of the '891 Patent. A reasonable opportunity for discovery will likely provide further evidentiary support for the fact that XYLEM's equipment has no substantial non-infringing use along with evidentiary support for such knowledge and intent.

85. XYLEM's past and continued acts of infringement of the '891 Patent have caused damage to Northern Divers. Thus, Northern Divers is entitled to recover damages from XYLEM in an amount to be determined at trial, including but not limited to lost profits, but in no event less than a reasonable royalty for XYLEM's infringement, together with interest and costs as fixed by the Court pursuant to 35 U.S.C. § 284.

86. XYLEM's ongoing infringement of the '891 Patent has caused and will continue to cause irreparable harm to Northern Divers unless and until the Court enters an injunction prohibiting XYLEM from engaging in further acts of infringement, including contributory infringement of the '891 Patent.

87. Upon information and belief, XYLEM's conduct has been, and will continue to be, willful and wanton and justifies the award of increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**PRAYER FOR RELIEF**

WHEREFORE, Northern Divers respectfully requests that this Court enter judgment against Defendants as follows:

  A. Judgement that Defendant ASI has infringed one or more claims of the '891 Patent;

  B. Judgement that Defendant PSEG has indirectly infringed one or more claims of the '891 Patent;

  C. Judgement that Defendant XYLEM has contributorily infringed one or more claims of the '891 Patent;

  D. Preliminary and permanent injunctive relief enjoining and restraining Defendants and each of their officers, directors, partners, employees, agents, servants, attorneys, successors, assigns, licensees, and all other persons in privity or acting in concert with them, from using, copying, publishing, disclosing, transferring, or selling Northern Divers's proprietary or patented methodology, and from obtaining any commercial advantage or unjust enrichment from same;

  E. Preliminary and permanent injunctive relief enjoining and restraining Defendants and each of their officers, directors, partners, employees, agents, servants, attorneys, and all persons in privity or acting in concert with them, from selling or offering for sale any products or services that employ Northern Divers's proprietary or patented methodology;

  F. An award of damages adequate to compensate Northern Divers for the infringement that has occurred, pursuant to 35 U.S.C. § 284, including pre- and post-judgment interest;

  G. An accounting and/or supplemental damages for all damages occurring after any discovery cutoff and through final judgment;

  H. An award of treble damages for willful infringement pursuant to 35 U.S.C. § 284;

  I. A finding that this action for infringement is an exceptional case under 35 U.S.C. § 285, and an award of attorneys' fees based on this case being an exceptional case pursuant to 35 U.S.C. § 285, including pre-judgment interest on such fees;

  J. An award of punitive damages;

K. Costs and expenses in this action; and

L. Such other and further relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Northern Divers hereby demands a trial by jury on all issues triable to a jury.

Dated: August 5, 2024   Respectfully submitted,

        By: s/Y. Jae Kim

        Y. Jae Kim, Esq.
        yjaekim@kimiplawgroup.com
        Firouzeh Nur-Vaccaro, Esq.
        firouzehnurvaccaro@kimiplawgroup.com

        **KIM IP LAW GROUP LLC**
        129 W. Evesham Road
        Voorhees, NJ 08043
        Tel: (856) 520-8988
        Email: lit@kimiplawgroup.com
        *Attorneys for Defendant*

4893-0695-8549, v. 3